UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | NO. 3:17-cr-00130 |
| | ) | |
| JAMES WESLEY FRAZIER | ) | |
| AELIX SANTIAGO | ) | |
| MICHAEL FORRESTER | ) | |
| JAMIE HERN | ) | |
| DEREK LEIGHTON STANLEY | ) | |
| WILLIAM BOYLSTON | ) | |
| JASON MEYERHOLZ | ) | |

### MEMORANDUM OPINION AND ORDER

After the testimony of almost 100 witnesses, with less than two days left in the Government's case-in-chief, and with Defendants' case expected to last less than a day, five of the seven Defendants – James Frazier, Aelix Santiago, Jamie Hern, William Boylston, and Jason Meyerholz– have moved for a mistrial. (Doc. Nos. 2313, 2314, 2316). They claim a mistrial is warranted because of the delays that have occurred in this case, largely due to recesses caused by COVID-19, and because the last shutdown for three weeks was in the middle of the testimony of Robert Humiston who provided evidence regarding the murder of Stephen Cole. Having thoroughly considered all of the arguments raised, having observed this trial first-hand, and having seen and spoken with the very attentive jury in this case, the motions for mistrial based on the record as it now exists will be denied.

### I.

"Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives." Fed. R. Crim. P. 26.3. Thus far, neither Defendants Forrester or

Stanley have moved for, or joined in, the motions for mistrial. Thus, for purposes of this opinion only, the Court assumes that neither wants a mistrial at this point in time. Consequently, the question is whether manifest necessity exists for declaring a mistrial so as to not bar retrial based on double jeopardy grounds. Oregon v. Kennedy, 456 U.S. 667, 672 (1982).

The "manifest necessity" doctrine stems from Justice Story's opinion in United States v. Perez, 22 U.S. (9 Wheat.) 579 (1824). There, the Supreme Court held that a judge may declare a mistrial and discharge a jury when "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." Id. at 580. The decision of whether or not to grant a mistrial is "left to the 'sound discretion' of the judge but 'the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.'" Renico v. Lett, 559 U.S. 766, 774 (2010) (quoting Perez, 22 U.S. at 580).

"Although the Supreme Court has refined the doctrine over the years, this emphasis on caution has remained since Perez." Johnson v. Karnes, 198 F.3d 589, 594 (6th Cir. 1999) "For example, in [Arizona v.] Washington, the Supreme Court further elaborated on the 'manifest necessity' standard and noted that the standard cannot 'be applied mechanically or without attention to the particular problem confronting the trial judge. . . . '[N]ecessity' cannot be interpreted literally; instead . . . we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate.'" Id. (quoting Washington, 434 U.S. 497, 506 (1978). The Court does not find that high degree of necessity here under either of the theories advanced by Defendants, although further inquiry of the jury (as addressed below) may result in a different conclusion.

2

## A.

There have been numerous delays and shutdowns during this case, almost all due to COVID-related issues. COVID has struck at least four [or five?] times, affecting jurors, Deputy Marshals, Defense counsel and/or their staff, and members of the prosecution team. When COVID struck, the Court went into recess for the period of time recommended by the Centers for Disease Control ("CDC") to prevent further spread among the trial participants. This unquestionably disrupted the rhythm and flow seen in most trials, but "trial courts have inherent authority, and even 'grave responsibility,' to determine what safety measures are necessary to protect the judge, court personnel, the parties, the lawyers, the jurors, and the audience in and around the courtroom." United States v. Smith, No. 21-5432, 2021 WL 5567267, at *2 (6th Cir. Nov. 29, 2021).

As dismal as this all sounds, however, it cannot be gainsaid that this trial was always expected to last approximately three months and we are barely beyond that point now. Therefore, to the extent that Defendants complain about jurors forgetting the testimony of witnesses due to the mere passage of time, the same argument could have been made had the trial proceeded without any hiccups, or in any lengthy trial for that matter. No doubt, the jurors' recollection of earlier testimony may not be as clear as their remembrance of more recent testimony but that is not a basis for a mistrial. If it were, any trial of more than a few weeks would be grounds to abort.

Besides, most of the jurors in this case have taken copious notes, and all have been paying close attention as the evidence has been admitted. That, coupled with closing arguments will lessen the possibility that any evidence has been truly forgotten, as opposed to having been stored away in the memory bank for later retrieval.

It is also true that breaks in a trial increase the risk that some outside influence will come to

bear on a juror.  See, United States v. Hays, 122 F.3d 1233, 1236 (9th Cir. 1997) (stating that "the length of the recess created a danger that jurors would be exposed to improper outside influences").  However, each time a break from the proceedings has been necessary in this case, the Court has assiduously asked the jurors about outside influences.  The Court has no basis or reason to suspect that any one or more of them was untruthful when they answered in the negative.  Nor does the Court have any doubt that each of the jurors have taken to heart this Court's repeated admonitions that they keep an open mind and not reach any conclusions until the evidence has been concluded and they have been given the Court's final instructions.  See Penry v. Johnson, 532 U.S. 782, 799 (2001) (jurors are presumed to follow the court's instructions); Richardson v. Marsh, 481 U.S. 200, 206 (1987) (same).

The Court acknowledges that, depending upon the circumstances, some breaks in proceedings may simply be too long.  Such was the case in Hays where the Ninth Circuit held that actual prejudice existed in a case involving a break of 48 days between the giving of final instructions and the start of deliberations in order to accommodate a juror's vacation schedule. Even there, however, the problem was not so much the delay but that there were other alternatives, such as proceeding with the remaining twelve jurors because all were available for at least another twenty days.  Moreover, the Ninth Circuit noted that it had previously approved breaks of eleven, United States v. Diggs, 649 F.2d 731 (9th Cir.1981), and eighteen days, United States v. McConney, 728 F.2d 1195 (9th Cir.1984).  This, of course, occurred in a pre-COVID world.  As we have all come to learn, however, COVID has presented unique challenges and in United States v. Coversup, 2022 WL 2207309, at *1 (9th Cir. June 21, 2022), the Ninth Circuit affirmed the denial of a motion for mistrial based upon the trial court granting a two-week recess to allow for testing and quarantining

4

jurors in accordance with the then-prevailing CDC-protocols.

Without question, were it not for COVID, the trial in this case would have been held "with more sustained continuity," but the necessity of a "number of interruptions alone does not establish actual prejudice" warranting a mistrial. United States v. Van Dyke, 605 F.2d 220, 227 (6th Cir. 1979). Indeed, in Van Dyke, trial was scheduled for 23-days over a 55-day period described as follows:

> Thirteen of these days were half morning sessions; "full" days were relatively brief morning and afternoon sessions separated by a two hour lunch. In the midst of trial, with the consent of the parties, the District Judge for ten days attended a judicial conference in Williamsburg, Virginia. Court was also recessed for a three day period and for five individual days sprinkled throughout the course of the trial.

Id.

Rejecting defendant's assertion that "the delays, which occurred primarily during the prosecution's lengthy presentation, may have caused the jurors to mull over or give undue consideration to the Government's position" and finding no actual prejudice, the Sixth Circuit observed:

> The record shows that defense counsel employed extensive cross examination of witnesses. . . . Counsel for both sides were commendably well prepared for each session. If the jury did forget testimony, and we do not so conclude from the record, it is equally probable that the jury forgot evidence favorable to the prosecution, whose case in chief was largely interrupted, as it is probable that the jury forgot evidence favorable to [defendant].

Id. The same is true here.

A similar argument was raised by a defendant and rejected by the Fourth Circuit in a case involving a 32-day break during trial. There a defendant

> argue[d] that this 32–day hiatus precluded him from receiving a fair trial because it occurred at a stage in the trial after the jury had heard fully from the government and the other defendants, but before he had presented his case. Thus, he argues, the jury

5

Case 3:17-cr-00130   Document 2324   Filed 09/05/22   Page 5 of 11 PageID #: 16270

had an extended period to contemplate the government's position without hearing any countervailing argument.

United States v. Smith, 44 F.3d 1259, 1267–68 (4th Cir. 1995). Rejecting that argument as grounds for a mistrial, the Fourth Circuit observed:

> Inherent in the presentation of any trial lasting a period of days or months is the difficulty caused by the passage of time. As events move further to the past they may be lost through the foibles of memory or they may become fixed as an accepted reality, depending on the impression of the event. Longer trials only intensify this problem. Obviously, the problem can be aggravated by introducing unnecessary delays during the course of trial, and to the extent that such delays can be avoided, district courts should recognize their responsibility for doing so.
>
> Having recognized this inherent problem in lengthy trials and having considered the district court's ameliorating measures, we conclude that the district court did not abuse its discretion in declining to grant a mistrial because of the 32–day hiatus in this case. While the hiatus was a long one for a jury trial and can be tolerated only as a rare exception, the district court was fully aware of the difficulties the hiatus presented and took repeated steps to mitigate the potential for prejudice. Furthermore, [defendant] has demonstrated no actual prejudice. While [defendant] speculates that because the government's case was presented first, it became entrenched in the minds of the jurors during the hiatus, it can just as easily be speculated that because the government's case was more remote in time, the strength of the prosecution's evidence faded in the jurors' minds. To grant a mistrial is a drastic remedy that results in additional expense to the judicial system as well as to all the parties. In this case, at least six weeks of trial time would have been lost. Moreover, if [defendant's] motion for a mistrial were granted in this case, the district court would undoubtedly have been confronted with arguments by other defendants that a new trial would subject them to double jeopardy.

Id. at 1268. Again, the same thing can be said here, except that the delays in this case were all unpreventable, and three months will have been lost to the jurors, the Court, its staff, the deputy marshals, the transport officers, the court security officers, the jury administrators, the lawyers, and the Defendants.

Accordingly, a mistrial based on the delays and recesses required in this trial will bedenied.

6

**B.**

A mistrial based upon the alleged infringement of Defendants' due process rights and the right to confront witnesses will also be denied.

Humiston testified on direct on August 16, 2022. Immediately thereafter, and before COVID reared its ugly head once again, two of the seven Defendants had an opportunity to cross-examine him. Then, Defendant Hern tested positive, followed shortly thereafter by Defendant Meyerholz. This resulted in a two-week delay that was on the eve of the Sixth Circuit Judicial Conference, which the undersigned was obligated to attend. In short, three weeks will have passed before Defendants Meyerholtz, Stanley, Boylston, Santiago and Frazier have the opportunity to cross-examine Humiston. As a consequence, Defendants assert that their confrontation and fair trial rights have been infringed.

The Due Process Clause of the Fifth Amendment mandates a fair trial. United States v. Agurs, 427 U.S. 97, 107 (1976). The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him," with the primary interest protected by the clause being the right to cross-examine witnesses. Kentucky v. Stincer, 482 U.S. 730, 736 (1987). That said, it is "axiomatic . . . that a defendant is entitled to 'a fair trial, not a perfect one, because an error-free, perfect trial is not humanly possible.'" Smith, 2021 WL 5567267, at *1 (quoting United States v. Segines, 17 F.3d 847, 851 (6th Cir. 1994)). "This principle applies with even greater force during a public health emergency, where protective measures . . . upend traditional notions of what a 'normal' trial looks like. However, different does not necessarily mean unfair." Id.

As the Government concedes, "it is obviously preferable for cross-examination to follow

closely after direct" (Doc. No. 2318 at 7), but it does not follow that cross-examination of a witness must immediately follow direct examination. Thus, for example, it was not error for the trial court "to permit[] the government to put on direct testimony of three of its witnesses without intervening cross-examination" in order to allow the government to comply with its obligations under the Jencks Act. United States v. Williams, 375 F. App'x 682, 685 (9th Cir. 2010). This remained so, notwithstanding defendants argument "that this procedure was prejudicial because, on the eve of a four-day recess, the jurors only heard the government witnesses' version of Defendants' criminal conduct." Id. As previously mentioned, the same sorts of arguments were rejected by the Sixth Circuit in Van Dyke and the Fourth Circuit in Smith, and are rejected again here.

Moreover, the notion that the direct examination of Humiston will have been "cemented" in the jurors' heads is pure speculation. For one, it ignores that counsel for two Defendants have already completed their cross-examination of him, meaning this was the last thing the jurors heard before the recess, not the Government's direct. For another, this accepts as a given that the jurors will ignore this Court's consistent and repeated instructions during this case that the jurors keep an open mind and not come to any conclusion until they have heard all of the proof as well as the final instructions of the Court. Again, the Court cannot accept the cynical view that the jurors will abandon their oath and not follow this Court's instructions.

The argument of prejudice also fails to consider that remaining counsel will have had three weeks to prepare for the cross-examination of Humiston. This will be the first evidence the jurors will hear upon returning to court. Presumably, and if the past is any indication, these will be robust, skillful examinations, and it is no more speculative to say that this – as opposed to the Government's direct from a few weeks ago – will be what sticks in the jurors' minds.

8

Case 3:17-cr-00130   Document 2324   Filed 09/05/22   Page 8 of 11 PageID #: 16273

closely after direct" (Doc. No. 2318 at 7), but it does not follow that cross-examination of a witness must immediately follow direct examination. Thus, for example, it was not error for the trial court "to permit[] the government to put on direct testimony of three of its witnesses without intervening cross-examination" in order to allow the government to comply with its obligations under the Jencks Act. United States v. Williams, 375 F. App'x 682, 685 (9th Cir. 2010). This remained so, notwithstanding defendants argument "that this procedure was prejudicial because, on the eve of a four-day recess, the jurors only heard the government witnesses' version of Defendants' criminal conduct." Id. As previously mentioned, the same sorts of arguments were rejected by the Sixth Circuit in Van Dyke and the Fourth Circuit in Smith, and are rejected again here.

Moreover, the notion that the direct examination of Humiston will have been "cemented" in the jurors' heads is pure speculation. For one, it ignores that counsel for two Defendants have already completed their cross-examination of him, meaning this was the last thing the jurors heard before the recess, not the Government's direct. For another, this accepts as a given that the jurors will ignore this Court's consistent and repeated instructions during this case that the jurors keep an open mind and not come to any conclusion until they have heard all of the proof as well as the final instructions of the Court. Again, the Court cannot accept the cynical view that the jurors will abandon their oath and not follow this Court's instructions.

The argument of prejudice also fails to consider that remaining counsel will have had three weeks to prepare for the cross-examination of Humiston. This will be the first evidence the jurors will hear upon returning to court. Presumably, and if the past is any indication, these will be robust, skillful examinations, and it is no more speculative to say that this – as opposed to the Government's direct from a few weeks ago – will be what sticks in the jurors' minds.

On this point, the Court is unpersuaded by Boylston's and Meyerholz's pin-cite reliance on California v. Green and Delaware v. Van Arsdall for the proposition that cross-examination is only effective "while the iron is hot," so as to prevent "the hardening of a direct before the blows of cross can test the truthfulness of the statement." (Doc. no. 2321 at 1). To the contrary, the Supreme Court in Green wrote:

> [T]he inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial. The most successful cross-examination at the time the prior statement was made could hardly hope to accomplish more than has already been accomplished by the fact that the witness is now telling a different, inconsistent story, and—in this case—one that is favorable to the defendant. We cannot share the California Supreme Court's view that belated cross-examination can never serve as a constitutionally adequate substitute for cross-examination contemporaneous with the original statement.

399 U.S. 149, 158 (1970) (citation omitted) (emphasis added). And, in Van Arsdall, the Supreme Court observed that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" 475 U.S. at 680 (1986) (quoting Davis v. Alaska, 415 U.S. 308, 318 (1974)). Cross-examination delayed is not necessarily cross-examination denied.

## C.

Finally, the Court would be remiss in failing to note that its concern is with the trial rights of each and every Defendant, two of whom have not joined in the motions for mistrial. As is their right, either or both may want "to go to the first jury and, perhaps, end the dispute then and there with an acquittal." United States v. Jorn, 400 U.S. 470, 484 (1971). This "valued right . . . merits

9

constitutional protection" and cannot blithely be ignored:

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.

Washington, 434 U.S. at 504–05.

### III.

Although the Court will deny the Motions for a Mistrial, it recognizes that Defendants have raised some valid concerns. To address those concerns, the Court will take several measures.

**First**, the Court will inquire of the jury whether the delays during the trial have had an effect on their ability to sit as a fair and impartial juror and to render a fair and just verdict based upon all of the evidence presented. This questioning will occur in open court, with the questioning done only by the Court. In the event that one or more jurors answer in the affirmative, the Court will hold a side bar with that particular juror and make further inquiry. As always, counsel and Defendants will be able to contemporaneously follow that questioning on their monitors via real time.

**Second**, the jury will be questioned by the Court about whether they have formed any opinions about the case, whether they have discussed the case with anyone, whether anyone has tried to discuss the case with them, and whether they continue to have an open mind in accordance with the instructions that they have been repeatedly given. Where appropriate, the Court will make individualized inquiry at the side bar.

**Third**, and likely in conjunction with the last point, the jury will be instructed once again that they cannot form opinions about the case until they have heard from all the witnesses, closing

arguments have been made, and they have been given final instructions by the Court.

**Fourth**, the Court no less than the jury will have been away from Humiston's testimony for three weeks and will be able to gauge whether the cross-examination of him is effective or diluted by the passage of time. If appropriate, the Court will reconsider the mistrial issue at that time.

**Fifth,** the parties will each have an additional one-half hour for closing, which will be limited to only one counsel for each party. Two and one-half hours should be more than sufficient to allow counsel to refresh recollections and point out to the jury what evidence they believe to be most important for their respective clients.

With these ameliorative measures, and for the reasons stated previously, the Motions for Mistrial (Doc. Nos. 2313, 2314, 2316) are hereby **DENIED**.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE